LINDA G. DOBSON, Plaintiff v. SUBSTITUTE TRUSTEE SERVICES, INC.,
SUBSTITUTE TRUSTEE, AND WELLS FARGO BANK MINNESOTA, N.A., AS
TRUSTEE FOR EQUIVANTAGE HOME EQUITY LOAN TRUST, 1996-4, NOTE
HOLDER, EQUIVANTAGE INC., AND AMERICA'S SERVICING COMPANY,
Defendants

No. COA10-632

(Filed 17 May 2011)

**Mortgages and Deeds of Trust— foreclosure—evidence of
owner of note and amount owed—photocopies**

The trial court erred by granting summary judgment for plain-
tiff in a foreclosure action based on the court's erroneous con-
clusions that defendants failed as a matter of law to present suf-
ficient evidence to show the amount owed and that Wells Fargo
was the holder of the note. Such a conclusion on this evidence
should not be made summarily, but only after meaningful consid-
eration of the evidence.

Judge HUNTER, Jr., Robert N., dissenting.

Appeal by Defendants from order entered 28 December 2009 by
Judge Russell J. Lanier, Jr., in Duplin County Superior Court. Heard in
the Court of Appeals 17 November 2010.

*Legal Aid of North Carolina, Inc., by Celia Pistolis, John
Christopher Lloyd, and Anne J. Randall, for Plaintiff.*

*Hutchens, Senter & Britton, P.A., by John A. Mandulak, for
Defendants.*

STEPHENS, Judge.

*Factual and Procedural Background*

On 31 July 1996, Plaintiff Linda G. Dobson ("Dobson") and her
husband borrowed, at a yearly rate of 12.41% interest, $50,400.00 from
Equivantage, Inc. ("Equivantage"). Dobson executed a promissory
note in favor of Equivantage in that same amount, the terms of which
(1) required Dobson to make monthly payments of interest and prin-
cipal amounting to $534.38, not including escrow; (2) charged a fee to
Dobson for any late payments in the amount of "4.000% of [the] over-
due payment of principal and interest;" and (3) stated that Dobson
would be in default under the note if she did not pay the full amount

of each monthly payment on its due date. Along with the note, Dobson executed a deed of trust securing Dobson's promise to pay with property located in Magnolia, North Carolina, and owned by Dobson and her husband.

In September 2001, Equivantage assigned the note and deed of trust to Defendant Wells Fargo Bank Minnesota, N.A.[1] ("Wells Fargo"). In October 2001, "Dobson became delinquent under the repayment terms." At that time, the unpaid principal balance on the note was $49,288.96. To cure Dobson's delinquency under the note, the parties agreed to the following modifications of the note: (1) $3,987.30 was capitalized as principal, resulting in an unpaid principal balance of $53,276.26; (2) Dobson was required to make monthly payments of interest and principal in the amount of $578.19 and escrow payments estimated at $62.51; and (3) the new maturity date was to be 1 November 2026. The loan modification agreement was signed by Dobson in February 2002.

Dobson made regular payments under the note between March 2002 and November 2003. However, Dobson stopped making payments after November 2003, and in March 2004, Wells Fargo "caused to be filed a foreclosure action assigned special proceeding number 04 SP 94." On 2 April 2004, following commencement of foreclosure proceedings, Dobson filed a bankruptcy petition in the Eastern District of North Carolina to stay the foreclosure. The bankruptcy court created a bankruptcy plan and stayed foreclosure for several years until, on 18 July 2007, the bankruptcy court dismissed Dobson's case for failure to comply with the provisions of the bankruptcy plan.

In September 2007, Defendant Substitute Trustee Services, Inc. ("STS"), as substitute trustee for Wells Fargo, filed a foreclosure action with the Duplin County Clerk of Superior Court. In an order filed 25 October 2007, the Duplin County Clerk of Superior Court found that (1) Wells Fargo is the holder of the note; (2) "[t]he total due under the note and [d]eed of [t]rust was undetermined;" and (3) "[t]here was insufficient evidence that [Dobson] was in default under the terms of the [d]eed of [t]rust." The Clerk of Superior Court then ordered that "the foreclosure of the deed of trust . . . is dismissed with prejudice."

1. The note and deed of trust were assigned to "Norwest Bank Minnesota, National Association, as trustee of Equivantage Home Equity Loan Trust 1996-4 under the pooling and servicing agreement dated as of November 1, 1996." According to affidavits, Norwest Bank Minnesota is "now known as Wells Fargo."

On 29 October 2007, Wells Fargo gave notice of appeal of the dismissal to the Duplin County Superior Court. On 1 November 2007, Dobson filed a complaint against Wells Fargo, STS, Equivantage, and Defendant America's Servicing Company ("ASC") (collectively, "Defendants") seeking (1) both a preliminary and permanent injunction against the foreclosure proceedings; (2) an equitable accounting and appointment of a referee; and (3) appointment of a mediator. On 13 November 2007, the trial court granted Dobson's request for a preliminary injunction.

Defendants answered Dobson's complaint on 14 January 2008, and on 10 September 2009, following a lengthy period of discovery, Dobson filed a motion for partial summary judgment. In an order entered 6 October 2009, Superior Court Judge Russell J. Lanier, Jr., denied Dobson's motion for partial summary judgment on the permanent injunction claim, but held open Dobson's motion on the requests for appointment of a referee and for an equitable accounting. On 30 November 2009, Defendants filed their own motion for summary judgment, requesting that Dobson's action be dismissed. At the 7 December 2009 hearing on Defendants' motion, Dobson "renewed and reopened" her previous summary judgment motion, which action was allowed by the trial court. On 28 December 2009, following the hearing on the motions for summary judgment, the trial court denied Defendants' motion and partially granted Dobson's motion for summary judgment by "permanently enjoin[ing] [Defendants] from foreclosing upon, or taking any steps of any nature to cause the foreclosure of the [d]eed of [t]rust . . . until such a time as Defendants can establish that they are the owner and holder of the [n]ote[] and the amount owed by [Dobson]." Wells Fargo and ASC gave notice of appeal of Judge Lanier's order on 27 January 2010.

## Discussion

Summary judgment is proper when, viewed in the light most favorable to the nonmovant, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *See S.B. Simmons Landscaping & Excavating, Inc. v. Boggs*, 192 N.C. App. 155, 163-64, 665 S.E.2d 147, 152 (2008).

On appeal, Defendants argue that the trial court erred by granting partial summary judgment for Dobson because, based on the evidence before the court, Dobson was not entitled to judgment as a matter of law. For the following reasons, we agree.

"A party moving for summary judgment may prevail if it meets the burden . . . of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Bone Int'l, Inc. v. Brooks*, 304 N.C. 371, 375, 283 S.E.2d 518, 520 (1981). In this case, the trial court concluded that Defendants should be enjoined from pursuing foreclosure because, as a matter of law, the evidence presented by Defendants was insufficient "to prove the existence of the facts necessary to allow a foreclosure." Specifically, the court concluded that Defendants failed to present legally sufficient evidence to establish (1) that Wells Fargo is the holder of the note and (2) the amount owed by Dobson on the note. Both of these conclusions are erroneous.

On the issue of Wells Fargo's status as holder of the note, Defendants presented the following evidence to establish that Wells Fargo is the holder of the note: (1) an affidavit by the vice president of loan documentation of Wells Fargo, which states that "[t]he owner and holder of the [n]ote and indebtedness is[] Wells Fargo;" (2) an affidavit by a default litigation specialist with Wells Fargo, which states that "Wells Fargo is the present and current holder of the [n]ote;" (3) a photocopy of the original note; and (4) a photocopy of the document assigning the note to "Norwest Bank Minnesota," which is "now known as Wells Fargo."

Despite this evidence establishing Wells Fargo as the holder of the note, Dobson argues on appeal—and successfully argued before the trial court—that Wells Fargo has not proven that it is the holder of the note because it failed to produce the original note. This argument is unavailing.

Under similar circumstances, this Court has held that where there is no evidence that photocopies of a note or deed of trust are not exact reproductions of the original instruments, a party need not present the original note or deed of trust and may establish that it is the holder of the instruments by presenting photocopies of the note or deed of trust. In *In re Adams*, —— N.C. App. ——, 693 S.E.2d 705 (2010), respondents argued that a foreclosing party "did not present competent evidence that it had possession of the Note and Deed of Trust because it offered only photocopies of the Note and Deed of Trust, rather than the original instruments." *Id.* at ——, 693 S.E.2d at 709. Based on a previous decision in *In re Helms*, 55 N.C. App. 68, 284 S.E.2d 553 (1981), *disc. review denied*, 305 N.C. 300, 291 S.E.2d 149 (1982)—in which this Court "determined that the photocopies of the

promissory note and deed of trust were sufficient competent evidence to establish the required elements under [the foreclosure statute,]" *id.* at ——, 693 S.E.2d at 709 (citing *Helms*, 55 N.C. App. at 70-71, 284 S.E.2d at 555)—the Court in *Adams* held that "[b]ecause respondents do not dispute that the photocopies are 'correct copies' of the original instruments, we conclude that [a foreclosing party] was not required to present the original Note and Deed of Trust at the foreclosure hearing to establish that it was in possession of these instruments." *Id.* at ——, 693 S.E.2d at 709-10.

In this case, although Dobson does not admit that the photocopy of the note is a correct copy, Dobson has presented no evidence to dispute the fact that Wells Fargo is the holder of the note. Dobson contends in her brief that she "specifically disputes that the photocopy of the [n]ote is a true and correct copy of the original." However, Dobson's only "dispute" of the authenticity of the note comes from her 7 December 2009 affidavit, in which she states that "I cannot confirm the authenticity of the copy of the [n]ote produced by the Defendants." This bare statement by Dobson is insufficient to cast doubt on Defendants' evidence that Wells Fargo is the holder of the note and does not serve as evidence that the copies are not exact reproductions.

Dobson further contends that in its "response to [Dobson's] first request for admission," Wells Fargo itself denied possession of the original note and, therefore, Defendants are required to establish that Wells Fargo is the holder of the note by presentation of the original note. Again, we are unpersuaded by Dobson's argument. The response by Wells Fargo that Dobson characterizes as Defendants' denial of possession of the original note reads as follows:

Wells Fargo did not prepare the loan origination documents, and is unsure as to whether the documents attached to [Dobson's] first request for admission constitute the complete set of loan origination documents used by Equivantage in the formation of [Dobson's] home loan. Because Wells Fargo did not originate this account, Wells Fargo denies that the documents attached to [Dobson's] first request for admission are true and correct copies of the loan origination documents signed by [Dobson] and used by Equivantage in the formation of [Dobson's] home loan.

However, Wells Fargo admits that the documents attached to [Dobson's] first request for admissions are true and correct copies of all loan origination documents currently in the posses-

sion of Wells Fargo that were acquired when Wells Fargo was assigned the payment rights to [Dobson's] account.

In our view, this statement by Wells Fargo clearly is not a denial of possession of the original note. The statement, read in its entirety, appears to (1) deny that the "attached documents" constitute *all of the loan origination documents used by Equivantage* in the formation of Dobson's home loan, and (2) admit that the "attached documents" are "true and correct copies" of *all loan origination documents currently in possession of Wells Fargo* and provided by Equivantage. Accordingly, rather than the above-quoted statement serving to deny Wells Fargo's possession of the original note, the statement admits that the photocopies of the original documents offered by Defendants are correct copies of the documents in Wells Fargo's possession, which include the original note. Because Defendants presented sufficient evidence to show that Wells Fargo is the holder of the note, we hold that the trial court erred by concluding that the evidence, taken in the light most favorable to Defendants, was insufficient to establish that Wells Fargo is the holder of the note.

As for whether Defendants presented sufficient evidence to establish the amount owed by Dobson on the note, the record contains evidence of the note itself, a 2002 modification of the note, the deed of trust, records of Dobson's payments and modifications of Dobson's payment schedule from bankruptcy proceedings, and computer printouts of Defendants' records of Dobson's payments and charges from January 2000 to February 2009. This evidence, taken in the light most favorable to Defendants, is sufficient to establish the amount owed by Dobson under the note.

The deed of trust and the note, both the original and as modified, set out the following information constituting the entirety of Dobson's obligations to Defendants: (1) the total amounts of principal owed and interest charged; (2) the amount of Dobson's initial monthly payment; (3) the due date of the monthly payments and the date on which payments are considered late; (4) the calculation and application of late charges; and (5) the types of expenses for which Dobson is responsible with respect to the property. This listing of Dobson's obligations, combined with the data from Defendants' records of Dobson's payments and charges, provide all of the information necessary to determine what amount is owed by Dobson. Although arriving at that determination may take some time and effort, and perhaps a calculator, the evidence contained in the record

in this case is not insufficient, as a matter of law, to allow the trial court to make that determination.

Accordingly, we hold that the trial court erred by granting summary judgment for Dobson based on the court's erroneous conclusions that, *as a matter of law*, Defendants failed to present sufficient evidence to show the amount owed by Dobson under the note and to show that Wells Fargo is the holder of the note. We note that this holding should be viewed in the context of summary judgment, and should not be interpreted as finding Defendants' evidence sufficient to warrant final judgment in Defendants' favor. Obviously, if the trial court, in a later proceeding beyond the summary judgment stage, finds Defendants' evidence incomplete, unreliable, or unconvincing, the court could ultimately conclude that Defendants failed to present sufficient evidence such that a permanent injunction is appropriate. However, based on the evidence presented in the case thus far, such a conclusion should not be made summarily by the court, but instead should be made only after meaningful consideration of the evidence, which apparently the trial court was loath to provide.[3]

Based on the foregoing, we remand "to let" the trial court "worry with it."

REVERSED AND REMANDED.

Judge STEELMAN concurs.

Judge HUNTER, ROBERT N., JR., dissents with a separate opinion.

HUNTER, JR., Robert N., Judge, dissenting.

As the majority notes, to prevail on her motion for summary judgment, Dobson has the burden of showing Defendants "cannot produce evidence to support an essential element of [their] claim." *Bone Int'l, Inc.*, 304 N.C. at 375, 283 S.E.2d at 520. I conclude Dobson has

---

3. From the transcript of the summary judgment hearing:

> THE COURT: I just don't like this mess. It's confusing. It's imprecise. I think probably the best thing to do is to let the Court of Appeals worry with it.

> . . . .

> THE COURT: Prepare an order and hopefully the folks up at Raleigh will be a lot smarter than I am and can figure this thing out. I am just not comfortable with the facts at all.

met her burden, demonstrating that Wells Fargo failed to present competent evidence sufficient to establish a genuine issue of material fact that it is the holder of Dobson's promissory note, an essential element of Defendants' claim. Therefore, I respectfully dissent.

In reaching the conclusion that Defendants have produced sufficient evidence to establish that Wells Fargo is the holder of Dobson's note, the majority cites *Adams* and concludes:

> Under similar circumstances, this Court has held that where there is no evidence that photocopies of a note or deed of trust are not exact reproductions of the original instruments, a party need not present the original note or deed of trust and may establish that it is the holder of the instruments *by presenting photocopies of the note or deed of trust.* (Emphasis added.)

I would like to conclude the majority does not intend this statement to stand for the proposition that a party may establish it is the holder of a promissory note merely "by presenting photocopies of the note." Because the record before this Court lacks any competent evidence that Wells Fargo is in possession of the Note, however, that is precisely what the majority permits.

Thus, my disagreement with the majority's decision is threefold. First, I conclude that our case law has established a narrow exception whereby an alleged holder may establish possession of a negotiable instrument without producing the original instrument, but that exception does not apply to the instant case. Second, I am concerned the majority's decision will be construed to permit an alleged holder of a negotiable instrument to establish it is in possession of an instrument merely by producing photocopies of the instrument. Third, I conclude Defendants have failed to produce competent evidence sufficient to establish that Wells Fargo is in possession of Dobson's promissory note. Without such evidence, Wells Fargo cannot establish it is the holder of the Note.

## A. Interpretation of *In re Helms* and *In re Adams*

We have recently stated in *Adams*, the Uniform Commercial Code's ("UCC") definition of "holder" applies to foreclosure proceedings held pursuant to section 45-21.16(d) of our General Statutes. *In re Adams*, —— N.C. App. at ——, 693 S.E.2d at 709; *see* N.C. Gen. Stat. § 45-21.16(d) (2009) (in order for the foreclosure to proceed, the clerk of court must find, *inter alia*, the existence of a "valid debt of which the party seeking to foreclose is the *holder*" (emphasis added)). The

**DOBSON v. SUBSTITUTE TR. SERVS., INC.**

[212 N.C. App. 45 (2011)]

UCC, as codified in our General Statues, defines a "holder" as "[t]he person in *possession* of a negotiable instrument that is payable either to bearer or to an identified person that is the person in *possession*." N.C. Gen. Stat. § 25-1-201(b)(21) (2009) (emphasis added). Thus, establishing that a party is in possession of a note is essential in order to establish that party is the holder of the note. *See Connolly v. Potts*, 63 N.C. App. 547, 550, 306 S.E.2d 123, 125 (1983) ("It is the fact of possession which is significant in determining whether a person is a holder, and the absence of possession *defeats that status*." (*cited with approval in Adams*, —— N.C. App. at ——, 693 S.E.2d at 709-10)) (emphasis added).

Defendants are correct in stating that this Court has also held an alleged note holder need not produce the original promissory note at the foreclosure hearing, *but only if* the debtor concedes the photocopies of the note admitted into evidence are accurate copies of the original. *See Adams*, —— N.C. App. at ——, 693 S.E.2d at 710 ("Because respondents do not dispute that the photocopies are 'correct copies' of the original instruments," the alleged note holder was not required to produce the original promissory note and deed of trust to establish possession.); *In re Helms*, 55 N.C. App. at 70, 284 S.E.2d at 554 ("When the opposing party, however, admits that the documents shown him are correct copies of the original, the original need not be produced."). *Adams* thus applied the exception, created in *Helms*, to the requirement that the party seeking to foreclose must produce the original note to establish that it is in possession of the instrument— when the opposing party concedes the photocopies are correct copies of the instrument. Our holdings do not, however, relieve an alleged holder of the burden of establishing the party is in possession of the original instrument, nor—when the accuracy of the photocopy of the note is contested—do our holdings relieve the party of the burden of producing the original instrument.[4]

In *Helms*, possession of the note and deed of trust were not at issue. Rather, the appellant argued the "best evidence" rule required production of the original note and deed of trust by the party alleging to be the holder of the note. *Helms*, 55 N.C. App. at 70, 284 S.E.2d at

---

4. I recognize the UCC provides that a negotiable instrument may be enforced by "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to G.S. 25-3-309 or G.S. 25-3-418(d)." N.C. Gen. Stat. § 25-3-301 (2009). As Defendants have claimed to be the holder of the Note, however, my analysis is limited to Defendants' status as the holder of the instrument.

554. We concluded, however, that where the party seeking to foreclose produced photocopies of the note and deed of trust, and the debtors contested *only* the interest rate term within the note, it was unnecessary to produce the originals; the interest rate—and thus the *amount* of the debt due—is not relevant to a foreclosure proceeding. *Id.* Having established that the photocopies of the instruments were properly introduced, we then concluded there was sufficient evidence in the record to support the trial court's findings. *Id.* at 71, 284 S.E.2d at 555. That conclusion, however, does not imply that the photocopies were the *only* evidence of possession. Significantly, the opinion states there was evidence introduced in the trial court that the party seeking foreclosure was the holder of the note and deed of trust. *Id.* at 69, 284 S.E.2d at 554. On appeal, rather, the appellant argued the best evidence rule required production of the original note, and we concluded that, under the circumstances presented in *Helms*, it did not. *Id.* at 70, 284 S.E.2d at 554.

Similarly, in *Adams*, this Court concluded that, where the debtor *did not dispute* that the photocopies of the note and deed of trust were "correct copies" of the originals, the party claiming to be the holder of the instruments did not need to produce the originals to establish it was in possession of the instruments. *Adams*, —— N.C. App at ——, 693 S.E.2d at 710. I do not interpret this holding in *Adams* to mean that a photocopy of the promissory note is, by itself, sufficient evidence to prove possession of the instrument. Rather, I conclude *Adams* merely applied *Helms* to reject the respondents' argument that even though *they did not dispute* the photocopies produced were not "exact reproductions" the original note must be produced. *Id.* As stated in *Helms*, "[w]hen the opposing party, however, admits that the documents shown him are correct copies of the original, the original need not be produced." 55 N.C. App. at 70, 284 S.E.2d at 554.

Here, Dobson contests the authenticity of the photocopy of the Note and, as discussed further below, the record contains evidence that the copy produced is not an exact reproduction of the original. Therefore, I conclude, the exception to the requirement to produce the original instrument, articulated in *Helms* and reiterated in *Adams*, does not apply to the present case.

Moreover, the lender bears the burden of proving the existence of their right to foreclose under section 45-21.16 of our General Statutes. *Adams*, —— N.C. App. at ——, 693 S.E.2d at 709 (citing *In re*

*Foreclosure of Brown,* 156 N.C. App. 477, 489, 577 S.E.2d 398, 406 (2003)). The majority's holding, however, impermissibly shifts the burden of proving Defendants' photocopy of the Note is not an accurate copy of the original to Dobson, when it is the Defendants who, allegedly, have possession of the instrument.

Assuming *arguendo* that our holdings permit Defendants to establish possession of the promissory note by means other than production of the original instrument, I conclude the evidence offered by Defendants is not competent evidence of Defendants' possession of the Note.

### B. Defendants' Affidavits

In support of their argument that Wells Fargo is the holder of Dobson's promissory note, Defendants submitted affidavits from two Wells Fargo employees. Neither affidavit, however, alleges any facts that would allow this Court to conclude that Defendants are in possession of Dobson's note.

The affidavit by Yolanda Williams, Vice President of Loan Documentation at Wells Fargo, makes the conclusory statement that "[t]he owner and holder of the Note and indebtedness is: Wells Fargo Bank Minnesota, NA, as Trustee for Equivantage Home Equity Loan Trust, 1997-1." This statement of the identity of the alleged holder is not a statement of fact, but is a legal conclusion that is to be determined on the basis of factual allegations. As such, the statement is irrelevant as to the determination of the holder of the instrument as defined under the UCC. *See Lemon v. Combs,* 164 N.C. App. 615, 622, 596 S.E.2d 344, 349 (2004) (" 'Statements in affidavits as to opinion, belief, or conclusions of law are of no effect.' " (quoting 3 Am. Jur. 2d, *Affidavits* § 13)); *see also Speedway Motorsports Int'l Ltd. v. Bronwen Energy Trading, Ltd.,* —— N.C. App. ——, —— n.2, —— S.E.2d ——, —— n.2, slip. op. at 12 n.2, No. 09-1451, 2011 WL 646664 (Feb. 15, 2011) (rejecting a party's contention that the Court must accept as true all statements found in the affidavits in the record, stating, "our standard of review does not require that we accept a witness' characterization of what 'the facts' mean").

Furthermore, Williams avers in her affidavit that Dobson's note was assigned to "Equivantage Home Equity Loan Trust, 1997-1." This is not the same trust indicated by the indorsement on the photocopy of the Note, nor is it the same trust to which Defendants claim the Note is presently assigned: "Equivantage Home Equity Loan Trust

1996-4." Thus, as Williams' affidavit alleges no facts to establish who is in physical possession of the Note, makes an irrelevant conclusion of law as to the identity of the holder, and alleges the Note has been assigned to a different trust, I conclude the Affidavit is not competent evidence that Defendant Wells Fargo Bank Minnesota, N.A. as Trustee for Equivantage Home Equity Loan Trust 1996-4 is the holder of Dobson's note.

This discrepancy between Williams' affidavit and the indorsement on the Note also demonstrates the danger of permitting photocopies of the promissory note to suffice as the sole evidence of possession: there is at least one assignment of Dobson's note that is not evidenced by the photocopy of the instrument. Granted, if the Note were endorsed as Williams describes, rather than as shown on the photocopy of the Note, the instrument would still be payable to Wells Fargo, as a trustee. *See* N.C. Gen. Stat. § 25-3-110(c)(2) (2009) ("If an instrument is payable to (i) a trust, an estate, or a person described as trustee or representative of a trust or estate, the instrument is *payable to the trustee*, the representative, or a successor of either, whether or not the beneficiary or estate is also named . . . .") (emphasis added). Williams' averment that the Note was assigned to a different trust, however, demonstrates the potential for multiple suits on the same promissory note if proof of possession could be established merely by producing a photocopy of the instrument, as contemplated in *Liles v. Myers:* an alleged holder "could negotiate the instrument to a third party who would become a holder in due course, bring a suit upon the note in her own name and obtain a judgment in her favor." 38 N.C. App. 525, 527, 248 S.E.2d 385, 387 (1978). Permitting such evidence to establish that a party seeking foreclosure is in possession of the promissory note would provide little protection from such an "inequitable occurrence" contemplated by the *Liles* Court. *Id.* at 528, 248 S.E.2d at 388 ("As evidence that a [party] is holder of a note is an essential element of a cause of action upon such note, the [debtor] was entitled to demand strict proof of this element." (emphasis added)).

The second affidavit produced by Defendants, that of Jennifer L. Robinson, Default Litigation Specialist for Wells Fargo, suffers similar inadequacies. Robinson avers that Dobson's note was assigned to "Norwest Bank Minnesota, National Association as Trustee of Equivantage Home Equity Loan Trust 1996-4 under the pooling and servicing agreement dated as of November 01 1996, now known as Wells Fargo." She then makes the conclusory statement, "Wells Fargo is the present and current holder of the Note." Again, a determination

of the entity that is the holder of a negotiable instrument under the UCC is a legal conclusion to be determined on the basis of factual allegations; Robinson's opinion as to Wells Fargo's status as the holder of the Note is irrelevant. Without any allegation of facts that would allow this Court to determine Wells Fargo is in possession of Dobson's note, Robinson's affidavit is not competent evidence of Well Fargo's status as the holder of the Note.

## C. Wells Fargo's Answer

The majority also points to Wells Fargo's Answer to one of Dobson's Requests for Admission as support for concluding Wells Fargo is in possession of Dobson's note:

> Wells Fargo did not prepare the loan origination documents, and is unsure as to whether the documents attached to [Dobson's] first request for admission constitute the complete set of loan origination documents used by Equivantage in the formation of [Dobson's] home loan. Because Wells Fargo did not originate this account, Wells Fargo denies that the documents attached to [Dobson's] first request for admission are true and correct copies of the loan origination documents signed by [Dobson] and used by Equivantage in the formation of [Dobson's] home loan.

> However, Wells Fargo admits that the documents attached to [Dobson's] first request for admission are true and correct copies of all loan origination documents currently in the possession of Wells Fargo that were acquired when Wells Fargo was assigned the payment rights to [Dobson's] account.

I agree with the majority, this statement is not a denial of possession of the original note as Dobson contends. I cannot, however, agree that this statement is an admission that Wells Fargo is in possession of the original note. The statement is merely an admission that the documents that were attached to Dobson's Request for Admission were true and correct copies of all loan origination documents *that Wells Fargo possessed* at the time the statement was made; it does not state that Wells Fargo was in possession of all of the loan origination documents.

In my view, the majority's interpretation contradicts itself. To conclude this answer states that Wells Fargo possesses the original note, the majority necessarily interprets its Answer to state that Wells Fargo possesses all of the loan origination documents. This is con-

tradicted by the first paragraph of the Answer in which Wells Fargo states it is "unsure" whether the documents provided by Dobson "constitute the complete set" of the loan origination documents. Wells Fargo's counsel reiterated this uncertainty in the hearing on Defendants' Motion for Summary Judgment: "We don't know if these are all of the origination documents. They were the copies that were provided to us when Wells Fargo purchased the loan, and that's basically the answer we said."

If, as the majority suggests, Wells Fargo's Answer establishes that it possesses all of the loan origination documents, including the original note, how could Wells Fargo not know whether the documents provided by Dobson were a complete set of all of the original documents? This discrepancy makes the majority's interpretation of Wells Fargo's Answer untenable, and I cannot adopt their conclusion.

Our decision in *Connolly*, 63 N.C. App. 547, 306 S.E.2d 123, provides further support for concluding that Defendants' evidence is not sufficient to establish that Wells Fargo is the holder of the Note. In *Connolly*, the petitioners sought to foreclose on a promissory note and deed of trust and were denied at the special proceeding before the clerk of court. 63 N.C. App. at 548, 306 S.E.2d at 124. Several years prior to instituting foreclosure proceedings on the note, the petitioners assigned and delivered that note to a bank as collateral for a loan for which they were the debtors. *Id.* at 549, 306 S.E.2d at 124. At the time the petitioners instituted foreclosure proceedings with the clerk of court, their loan from the bank had not been repaid and the bank retained possession of the note they pledged as collateral and which they sought to foreclose. *Id.*

The petitioners appealed the decision by the clerk of court for a *de novo* hearing. During the hearing, the petitioners "introduced the originals of the note and deed of trust," but also testified "they had left the [] note at the bank, for security purposes." *Id.* at 551, 306 S.E.2d at 125. The trial court found the bank was in "physical possession" of the note and concluded, as a matter of law, the petitioners were not the holders of the note at the institution of the foreclosure proceedings. *Id.* at 549-50, 306 S.E.2d at 124-25.

On appeal to this Court, we concluded that, despite the fact that the party seeking foreclosure introduced the original note at the time of the *de novo* hearing, the trial court's findings of fact did not address whether petitioners were in possession of the note at the time of the trial. *Connolly*, 63 N.C. App. at 549-50, 306 S.E.2d at

124-25. Such requirement for "strict proof" that the party seeking to foreclose is in possession of the promissory note cannot be reconciled with the majority's reliance on Defendants' evidence.

———————————

In sum, I conclude *Helms* established, and *Adams* applied, a narrow exception to the requirement that the party seeking to foreclose must produce the original note to establish possession of that note; the exception is permitted only in those cases where the parties do not dispute that photocopies of the note are "correct copies" of the original instrument. Assuming *arguendo* that our holdings permit a party seeking to foreclose under a power of sale to establish possession of the promissory note by means other than production of the original instrument, I find no competent evidence in the record from which this Court could determine that Wells Fargo is the holder of Dobson's note. Neither of the affidavits provided by Defendants, nor the answer provided by Wells Fargo allege possession of the instrument. Thus, Defendants have failed to present competent evidence sufficient to establish a genuine issue of material fact to survive Plaintiff's Motion for Summary Judgment. Accordingly, I would affirm the trial court's Order.